Roman Otkupman, CSBN 249423
Roman@OLFLA.com
Meghan Maertz, CSBN 276976
Meghan@OLFLA.com
OTKUPMAN LAW FIRM, A LAW CORPORATION
28632 Roadside Dr., Suite 203
Agoura Hills, CA 91301
Telephone: (818) 293-5623
Facsimile (888) 850-1310

Attorneys for Plaintiff,
Erica Martin, on behalf of herself and all others similarly situated, and on behalf of the general public

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERICA MARTIN, on behalf of herself and all others similarly situated, and on behalf of the general public, | Case No.  4:18-cv-00769-YGR |
| Plaintiff, | **PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PROVISIONAL CERTIFICATION OF CLASS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| vs. | |
| CATTLECAR OF DELAWARE, INC., A Delaware Corporation, and DOES 1 through 10, inclusive, | |
| Defendants. | Date:  July 9, 2019<br>Time:  2:00 P.M.<br>Ctrm.:  1, 4th Floor<br>Hon. Yvonne Gonzalez Rogers |
| | **[FILED CONCURRENTLY WITH PLAINTIFF'S NOTICE OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND PROVISIONAL CERTIFICATION OF CLASS; DECLARATION OF ROMAN OTKUPMAN IN SUPPORT THEREOF; DECLARATION OF ERICA MARTIN IN SUPPORT THEREOF; DECLARATION OF DANIEL LA IN SUPPORT THEREOF; [PROPOSED] FINAL JUDGMENT]** |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## TABLE OF CONTENTS

I.     INTRODUCTION..................................................................................2

II.    FACTUAL AND PROCEDURAL BACKGROUND...............................2

       A.  Procedural History ....................................................................2

       B.  Investigation ..............................................................................3

III.   SUMMARY OF SETTLEMENT TERMS ...........................................3

IV.    THE COURT SHOULD GRANT FINAL APPROVAL OF THE SETTLEMENT.......4

V.     THE SETTLEMENT IS FAIR, ADEQUATE, AND REASONABLE.....................4

VI.    SETTLEMENT AGREEMENT IS FAIR AND FULFILLS FINAL APPROVAL

       CRITERIA ..................................................................................6

       A.  The Amount Offered in Settlement is Fair and Reasonable...........6

       B.  Settlement Amount is Reasonable in Light of the Legal Contentions..........6

       C.  Zero Class Members Have Objected to the Settlement and One Opted Out............7

       D.  The Experience and Views of Class Counsel Favor Final Approval....................7

VII.   THE IDENTIFIED CLASS SHOULD BE CERTIFIED ....................................9

       A.  The Class is Ascertainable....................................................9

       B.  The Numerosity Requirement is Satisfied.................................9

       C.  Common Issues of Law and Fact Predominate Over Any Individual Issues...........10

       D.  Plaintiff's Claims Are Typical..............................................11

       E.  Class Received Adequate Notice..........................................11

       F.  The Settlement Avoids the Risks Inherent in Continued Litigation.................12

       G.  The Requested Administration Costs Are Reasonable................................13

       H.  Payout Schedule, Final Judgment, and Continuing Jurisdiction to Enforce the

           Settlement Agreement..........................................................13

       I.  Funding and Distribution time table based upon Section 7.4 of the Settlement

           Agreement..........................................................................14

VIII.  CONCLUSION ............................................................................15

1

## TABLE OF AUTHORITIES

<u>Cases</u>

*Armstrong v. Davis 275 F. Rd 849, 868 (9th Cir. 2001)* ........................................................10

*B.W.I. Custom Kitchen v. Owens-Illinois, Inc.* 191 Cal. App. 3d 1341, 1347 (1987)..................11

*Bowles v. Superior Court* 44 Cal. 2d 574, 587 (1955) ........................................................10

*Class Plaintiffs v. City of Seattle* 955 F. 2d 1268, 1276 (9th Cir. 1992)..............................4, 7

*Classen v. Weller*, 145 Cal. App. 3d 27, 46 (1983) ........................................................9, 11

*Clothersrigger, Inc. v. TGE Corp.*, 191 Cal. App. 3d 605, 617 (1987)..................................10

*Dunk v. Ford Motor Co., (1996)* 48 Cal.App.4th at p. 1802, 56 Cal.Rptr.2d 483 ...............9

*Ellis v. Naval Air Rework Facility* 661 F.s 939 (9th Cir. 1980) ........................................7

*Employment Development Department v. Superior Court* 30 Cal. 3d 256, 265 (1981) ............10

*Fisher Bros. v. Cambridge Lee Industries Inc.* 630 F.Supp 482, 488 ...............................8

*Gasperoni v. Metabolife, International* 2000 WL 33365948 (E.D. Mich. 2000) ...............10

*Gay v. Waiters' & Dairy Lunchmen's Union* 489 F. Supp. 282 (N.D. Cal. 1980), aff'd 694 F.2d 531

(9th Cir. 1982); ........................................................................................................9

*Gen'l Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 155 (1982)......................................10

*Hanlon v. Chrysler Co.*, 150 F.3d 1011, 1020 (9th Cir. 1998) ..............................4, 6, 7, 10, 11

*Hebbard v. Colgrove* 28 Cal. App. 3d 1017, 1030 (1972) ........................................9

*In re Beef Industry Antitrust Litigation* 607 F.2d 167, 179 (5th Cir. 1979) ......................5

*In re Pacific Enterprises Securities Litigation* 47F.3d 373, 378 (9th Cir. 1995) ...............8

*Jamison v. Butcher & Sherrerd* 688 F.R.D. 479, 481 (E.D. Pa 1975)................................5

*Kincaid v. City of Fresno* 244 F.R.D. 597, 602 (E.D. Cal. 2007) ........................................10

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Kirkorian v. Borelli* 695 F.Supp. 446, 451 (N.D. Cal. 1988)..................................................6

*Laduke v. Nelson* 762 F.2d 1318, 1332 (9th Cir. 1985) ......................................................10

*McGhee v. Bank of America* 60 Cal. App. 3d 442, 450 (1976) ............................................11

*Officers of Justice v. Civil Service Com'n, Etc.*, supra 688 F.2d 615 (1982) at p. 624 .........5

*Richmond v. Dart Industries, Inc.*, 29 Cal. 3d 462, 469, 473-474 (1981) .............................9

*Rose v. City of Hayward*, 126 Cal. App.3d 926, 932 (1981) ................................................9

*Wershba v. Apple Computer, Inc.*, 91 Cal. App.4th 224, 234-325 (2001) ......................10, 12

*West v. Circle K Stores Inc.* No. CIV S-04-0438 WB GGH...................................................7

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

OTKUPMAN LAW
FIRM, ALC

## I.  INTRODUCTION

On February 19, 2019, this Court issued an Order granting preliminary approval of a class action settlement on behalf of the following class:

> All persons employed by Defendant Cattlecar of Delaware, Inc. as non-exempt store employees in California at any time from December 27, 2013 through and including February 19, 2019, which was the date on which the Court granted preliminary approval of this settlement. The Class includes all positions, regardless of job title, that worked in stores in California.

(Otkupman Decl., ¶ 21.)

Under the parties' settlement agreement, this action will be resolved for up to one hundred and seventy-five thousand dollars ($175,000.00) inclusive of any deductions. This settlement is fair, reasonable, and the product of serious, non-collusive negotiations. (Otkupman Decl., ¶ 15)

Notice of the settlement was distributed in accordance with the Court's preliminary-approval order. Zero (0) class members objected to the settlement, and there were zero (0) opt-outs. (Otkupman Decl., ¶ 22. La Decl., ¶9, 10.) The complete participation rate is a strong indication that the settlement is fair and adequate, and, as a result, Class Members found it to be so. *Id.*

As such, Plaintiff Erica Martin ("Named Plaintiff" or "Plaintiff" or "Mrs. Martin") who is a former employee of Cattlecar Of Delaware, Inc. (hereinafter referred to as "Defendant" or "Cattlecar" interchangeably) moves this Court for an order certifying the class for settlement purposes, approving the class action settlement, and confirming approval of the Named Plaintiff's enhancement, the Claim Administrator's payment, Class Counsel's attorneys' fees and litigation costs, and PAGA penalties paid to California Labor & Workforce Development, Agency ("LWDA").

## II.  FACTUAL AND PROCEDURAL BACKGROUND

### A. Procedural History

Cattlecar is a corporation doing business in California. (Otkupman Decl., ¶11.) Plaintiff alleged the following causes of action: Failure To Provide Meal And Rest Periods Or Compensation In Lieu Thereof  (Labor Code §§ 226.7 And 512; IWC Wage Order 7-2001); Knowing And Intentional Failure To Comply With Itemized Employee Wage Statement Provisions (Labor Code § 226(a), (e)); Failure To Timely Pay Wages Due At Termination (Labor Code §§ 201-203); Failure To Pay Wages In Violation Of Labor Code §§ 510, 1194; Violation Of Business And Professions Code § 17200; Penalties Pursuant To Labor Code Section 2699(f) For Violations Of Labor Code § 226(a), (e), §§ 201-203, § 226.7, §512, §§ 510, 1194 (the Private Attorneys' General Act, hereinafter

PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PROVISIONAL CERTIFICATION OF CLASS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

2

referred to as "PAGA") (*Id.*)

## B. Investigation

Subsequent to the filing of Plaintiff's complaint, the parties exchanged written discovery. (Otkupman Decl., ¶ 14) On May 8, 2018, the Parties participated in a day-long mediation with neutral JAMS mediator Hon. Luis A. Cardenas in San Francisco, California. The case did not settle at that time, and negotiations continued after that date, which involved a further exchange of formal and informal discovery and documents. The Parties ultimately accepted a mediator's proposal and finalized the terms of their agreement via a Memorandum of Understanding ("MOU") signed on October 12, 2018. Otkupman Decl., ¶ 14. At all times, the Parties' settlement negotiations have been non-collusive, adversarial, and at arm's length and through the assistance of a neutral third-party mediator. Otkupman Decl., ¶ 16. Through Plaintiff's investigation, Plaintiff believed that she would be able to show that some of the Settlement Class members were subject to similar policies and practices that were allegedly violative of California wage and hour laws, including Defendant's failure to incorporate its bonuses into a regular rate of pay for the purposes of overtime compensation; Defendant's failure to provide meal and rest breaks, and Defendant's failure to timely pay wages due at termination. (Otkupman Decl., ¶ 16.)

## III.    SUMMARY OF SETTLEMENT TERMS

The total amount of the settlement is one hundred and seventy-five thousand dollars ($175,000.00). All Class Members are entitled to a monetary reward unless they have opted out. They were not obligated to submit claim forms in order to receive payment of settlement moneies. (Otkupman Decl., ¶ 15.)

Under the Settlement, Defendant is to pay the following: (1) Reasonable expenses of the Claims Administrator in administering the settlement of ten thousand five hundred dollars ($10,500.00) (La Decl. ¶ 14); (2) An award of five thousand dollars ($5,000.00) to the Named Plaintiff as an enhancement payment for her service as a Class Representative; (3) Attorneys' fees in the amount of fifty-seven thousand seven hundred and fifty dollars ($57,750.00) which is equivalent to 33% of the settlement, for all work previously performed with regards to the present case and all remaining work to be performed; (4) Plaintiff's counsels' expenses/costs of five thousand five

PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PROVISIONAL CERTIFICATION OF CLASS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

3

OTKUPMAN LAW
FIRM, ALC

1  hundred and sixteen dollars and ninety-seven cents. ($5,516.97); and (5) ten thousand dollars

2  ($10,000.00) in consideration for a full and complete release of any claim of penalties that may be

3  owed pursuant to PAGA for the alleged violations of the Labor Code that were or could have been

4  asserted in this Action, seventy-five percent (75%) of which amounts to seven thousand five hundred

5  dollars ($7,500.00) and will be paid to California Labor & Workforce Development, Agency

6  ("LWDA") in satisfaction of any claim for penalties that may be owed to that agency under PAGA.

7  Twenty-five percent (25%) of this amount – two thousand five hundred dollars ($2,500.00)– will be

8  included in the Distributable Amount to be distributed to all claimants. (*Id.*) All remaining funds will

9  be distributed to Settlement Class Members.

## IV.  THIS COURT SHOULD GRANT FINAL APPROVAL OF THE CLASS ACTION
## SETTLEMENT

10

11  Plaintiff respectfully requests that the Court grant final approval as this settlement is fair,

12  adequate and reasonable, and because a strong judicial policy favors settlements, particularly where

13  complex class action litigation is concerned. *Class Plaintiffs v. City of Seattle* 955 F. 2d 1268, 1276

14  (9th Cir. 1992).

15  The notice process occurred according to the Court's order granting preliminary approval of

16  the settlement. In accordance with the Settlement, CPT served as the settlement administrator and

17  sent the notice of pendency of class action to the last known address of each of the one hundred

18  ninety-five (195) class members. (Otkupman Decl., ¶ 22, La Decl., ¶6) Zero (0) class members

19  objected to the settlement, and there were zero (0) opt-outs. (La Decl., ¶9,10) Thus, the total amount

20  of class members participating in this class action amounts to one hundred ninety-five (195), which

21  amounts to one hundred percent (100%) participation rate. (*Id.*)

## V.  THE SETTLEMENT IS FAIR, ADEQUATE AND REASONABLE

22

23  Before any class action can be settled, Federal Rule of Civil Procedure 23(e) "requires the

24  district court to determine whether a proposed settlement is fundamentally fair, adequate, and

25  reasonable." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998); *Class Plaintiffs v. City*

26  *of Seattle*, 955 F.2d 1268, 1276 (9th Cir.), *cert denied*, 506 U.S. 953 (1992) (same). In determining

27  whether a class settlement is fair, adequate, and reasonable the trial court should consider relevant

28

OTKUPMAN LAW
FIRM, ALC

PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PROVISIONAL
CERTIFICATION OF CLASS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
4

factors, such as "the strength of plaintiffs' case, the risk, expenses, complexity and likely duration of further litigation, the risk of maintaining class action status through trial, the amount offered in the settlement, the extent of discovery contemplated and the stage of the proceedings, the experience and views of counsel, the presence of a governmental participant, and the reaction of the class members to the proposed settlement." *Officers of Justice v. Civil Service Comm'n of San La*, 688 F. 2d 615, 624 (9th Cir. 1982).

Where a settlement is reached on terms agreeable to all parties, a court should disapprove of the settlement "only with considerable circumspection." *Jamison v. Butcher & Sherrerd*, 68 F.R.D. 479, 481 (E.D. Pa 1975).

Courts act within their discretion in approving settlements that are fair, not collusive, and take into account "all the normal perils of litigation as well as the additional uncertainties inherent in complex class actions." *In re Beef Industry Antitrust Litigation*, 607 F.2d 167, 179 (5th Cir. 1979) *cert. den sub. norm, Iowa Beef Processors, Inc. v. Meat Price Investigators Ass'n*, 452 U.S. 905 (1981).

Furthermore, a proposed class action settlement is *presumed* fair under the following circumstances: (1) the parties reached settlement after arms' length negotiations; (2) investigation and discovery were sufficient to allow counsel and the court to act intelligently; (3) counsel is experienced in similar litigation; and (4) the percentage of objectors is small. Newberg on Class Actions (4th ed. 2002) § 11.41. The declaration of Class Counsel Roman Otkupman, as well as the other declarations and exhibits filed, demonstrate that the proposed settlement was the product of serious, informed and non-collusive negotiations, otherwise proper and one which should be given final approval by the Court, and demonstrate Class Counsel's experience in this type of litigation. With application of these factors, it is manifest that the proposed settlement provides a benefit to the Class and is fair, adequate and reasonable.

In evaluating the fairness of a settlement proposal, courts must give proper deference to the private consensual decision of the parties because "the Court's intrusion upon what is otherwise a private consensual agreement between parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or

OTKUPMAN LAW
FIRM, ALC

PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PROVISIONAL
CERTIFICATION OF CLASS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
5

1  collusion between, the negotiating parties." *Hanlon v. Chrysler Inc.*, 150 F. 3d 1011, 1027 (9th Cir.

2  1998). Accordingly, the Court should take into account the informed recommendations of counsel

3  and the parties. *Kirkorian v. Borelli* 695 F.Supp. 446, 451 (N.D. Cal. 1988) ("The recommendation

4  of experienced counsel carries significant weight in the court's determination of the reasonableness

5  of the settlement.")

6       Here, the Parties engaged in extensive and adversarial discussions, and formal and informal

7  discovery in which Defendant provided Plaintiff with relevant information, including specific

8  timekeeping and payroll data pertaining to the class. (Otkupman Decl., ¶ 13.) On May 8, 2018, the

9  Parties attended private mediation with Judge Luis A. Cardenas, a mediator with significant

10  experience in wage and hour class actions. The case did not settle at that time, and negotiations

11  continued after that date, which involved a further exchange of formal and informal discovery and

12  documents. The Parties ultimately accepted a mediator's proposal and finalized the terms of their

13  agreement via a Memorandum of Understanding ("MOU") signed on October 12, 2018. (Otkupman
    Decl., ¶ 14.)

14  **VI.    SETTLEMENT AGREEMENT IS FAIR AND FULFILLS FINAL APPROVAL**

15  **CRITERIA**

16  **A. The Amount Offered in Settlement is Fair and Reasonable**

17       The total settlement amount is an all-inclusive amount of one hundred and seventy-five

18  thousand dollars ($175,000.00), which includes payment to Settlement Class members, the Named

19  Plaintiff's service award, the costs of administration of the settlement, and attorneys' fees and costs.

20  As discussed more fully below, these amounts are entirely fair and reasonable under all of the relevant

21  circumstances.

22  **B. Settlement Amount is Reasonable in Light of the Legal Contentions**

23       Although Plaintiff steadfastly maintains that her claims are meritorious, Plaintiff

24  acknowledges that there were substantial risks and uncertainty in proceeding with class

25  certification. Plaintiff's ability to prevail on certification and merits was uncertain because Defendant

26  contends that its employment policies and practices did not violate applicable wage and hour laws

27  and Defendant further contends that even if class certification was granted, there was no guarantee of

28

OTKUPMAN LAW
FIRM, ALC

PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PROVISIONAL
CERTIFICATION OF CLASS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
6

1   a good outcome for Plaintiff at trial. (Otkupman Decl., ¶ 19 and ¶ 20.)

2   Defendant further contends that the evidence mustered by Plaintiff does not evince any

3   common policy or practice that is violative of California wage and hour laws; in fact, according to

4   Defendant, the evidence merely demonstrates that any violations arose from individualized and

5   isolated events that would not be susceptible to class-wide determination. Specifically, Defendant

6   alleges that Cattlecar complied with all applicable wage and hour laws and Labor Code provisions.

7   (Otkupman Decl., ¶ 20.) Defendant alleges its employees were entitled to and actually provided meal

8   periods and rest breaks, paid all overtime owed, and provided accurate itemized wage statements in

9   accordance with California law. (*Id*.) These defenses, if successful, would severely, if not completely,

10  reduce the damages recoverable by class members. (*Id*.)

11  Defendant further claims that none of Plaintiff's claims are suitable for class certification

12  because individual issues predominate over common issues on these claims. (Otkupman Decl., ¶ 19.)

13  Here, the individualized inquiry could be focused on each individual who was not paid his or her

    requisite wages. (*Id*.)

14  In light of the uncertainties of protracted litigation, the Settlement Amount reflects an

15  excellent and fair recovery for the Class. Indeed, the Ninth Circuit has declared that a strong judicial

16  policy favors settlement of class actions. *West v. Circle K Stores, Inc.*, No. CIV S-04-0438 WB GGH,

17  2006 U.S. Dist. LEXIS 76558, *3 (E.D. Cal. June 13, 2006) citing *Class Plaintiffs v. City of Seattle*,

18  955 F.2d at 1276. Certainty of recovery is enhanced by an equitable and timely consummated

19  settlement such as that under consideration in this case.

20  **C. Zero Class Members Have Objected to the Settlement and Zero Opted Out.**

21  A presumption of fairness exists where the percentage of objectors and opt-outs is small.

22  *Hanlon v. Chrysler Corp., supra*, 150 F.3d at 1025-1026. Here, zero (0) class members objected to

23  the settlement and there were zero (0) class members who opted out. This equates to a 0 % opt out

24  rate. (La Decl., ¶ 11.)

25  **D. The Experience and Views of Class Counsel Favor Final Approval.**

26  The view of the attorneys actively conducting this litigation "is entitled to significant weight"

27  in deciding whether to approve the settlement. *Ellis v. Naval Air Rework Facility*, 87 F.R.D 15, 18

28

OTKUPMAN LAW
FIRM, ALC

PLAINTIFF'S <u>UNOPPOSED</u> MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PROVISIONAL
CERTIFICATION OF CLASS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

7

1  (N.D. Cal. 1980) aff'd 661 F.2d 939 (9th Cir. 1980); *Fisher Bros. v. Cambridge Lee Industries, Inc.*,

2  630 F.Supp 482, 488 (E.D. Pa 1985). Here, Class Counsel has conducted a thorough investigation

3  into the facts of this case. Based on that investigation, Class Counsel supports the Settlement as fair,

4  reasonable and adequate and believes that it is in the best interest of the Class. Class Counsel also

5  believes that the Settlement is a good result for the class. As indicated above, this endorsement is

6  worthy of significant weight given Class Counsel's experience in this type of litigation and detailed

7  knowledge of strengths and weaknesses of this case.

8  During the course of this litigation, Class Counsel spent a significant amount of time

9  calculating the amount each class member would be entitled to receive. (Otkupman Decl., ¶ 25.)

   Furthermore, Class Counsel spent a significant amount of time reviewing the relevant case law as

10 well as DLSE opinions and assessing the risk of taking such a case to trial. (*Id.*) It is upon completion

11 of Class Counsel's investigation that it was determined that this Settlement is fair and adequate in

12 light of the risks involved. (*Id.*) Defendant proposed a theory, which would have a possibility of

13 absolving it of any liability whatsoever. The risk of pursuing this case to trial was great, as the jury

14 could have determined that the alleged violations as stated above were not willful. "Parties

15 represented by competent counsel are better positioned than courts to produce a settlement that fairly

16 reflects each party's expected outcome in litigation." *In re Pacific Enterprises Securities Litigation*,

17 47 F.3d 373, 378 (9th Cir. 1995). Here, Plaintiff is represented by competent and experienced counsel

18 who possess extensive experience litigating wage and hour class actions from both the plaintiff and

19 defense side and have been appointed as class counsel in numerous cases alleging similar

20 claims. (Otkupman Decl., ¶ 5 and ¶ 6.) Plaintiff's Counsel conducted an in-depth review of

21 Defendant's policies and payroll records, and drew on their extensive experience in similar cases to

22 assess the strengths and weaknesses of Plaintiff's case. (Otkupman Decl., ¶ 9.) The settlement was

23 also reached with the input and assistance of Luis A. Cardenas, an experienced and respected neutral

24 wage and hour class action mediator. (Otkupman Decl., ¶ 16.) This factor strongly supports final

25 approval.

26 ///

27 ///

28

OTKUPMAN LAW
FIRM, ALC

PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PROVISIONAL
CERTIFICATION OF CLASS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

8

## VII.    THE IDENTIFIED CLASS SHOULD BE CERTIFIED

Federal district courts are authorized to adjudicate class wide claims based on a common course of conduct. California law and policy favors the fullest and most flexible use of the class action procedure, so any doubt as to the appropriateness of certification should be resolved in favor of certification. See *Richmond v. Dart Indus., Inc.*, 29 Cal. 3d 462, 469; 473-74 (1981). Class certification is appropriate when (1) the class is ascertainable and (2) there is a well-defined community of interest in the questions of law and fact involved affecting the parties to be represented." *Dunk*, supra, 48 Cal. App. 4th at 1806. The "community of interest" element embodies three factors: (1) predominant common questions of law or fact; (2) class representatives with claims or defenses typical of the class; and (3) class representatives who can adequately represent the class." Finally, the court must determine that a class action proceeding is the superior means for the fair and efficient adjudication of the litigation. *Id.* For settlement purposes, each of these prerequisites must be met.

### A.    The Class Is Ascertainable

Plaintiff meets each of the requirements for class certification. The class is readily ascertainable from the payroll records of Defendant. See *Rose v. City of Hayward*, 126 Cal. App.3d 926, 932 (1981) (finding that "class members are ascertainable where they may be readily identified without unreasonable expense or time by reference to official records").

### B.    The Numerosity Requirement Is Satisfied

The class is also sufficiently numerous, as there are approximately one hundred ninety-five (195) class members, making joinder impracticable. (Otkupman Decl., ¶ 30.) *Gay v. Waiters' & Dairy Lunchmen's Union*, 489 F. Supp. 282 (N.D. Cal. 1980), aff'd 694 F.2d 531 (9th Cir. 1982); *Hebbard v. Colgrove*, 28 Cal. App. 3d 1017, 1030 (1972) (no set minimum to meet the numerosity prerequisite, but class as few as 28 members is acceptable). Typicality is also met, as Plaintiff's claims are the same as those of the Settlement Class. See *Classen v. Weller*, 145 Cal. App. 3d 27, 46 (1983) (the purported representative's claim need not be identical to the claims of other members of the class; it is sufficient that the representative is similarly situated, so that he or she will have the motive to litigate on behalf of all class members).

PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PROVISIONAL CERTIFICATION OF CLASS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

9

OTKUPMAN LAW
FIRM, ALC

### C. Common Issues of Law and Fact Predominate Over Any Individual Issues

The predominance factor is satisfied here as well. Each of the class members suffered some violation of California wage and hour laws, including Labor Code § 226(a), (e), §§ 201-203, § 226.7, §512, §§ 510, 1194. (Otkupman Decl., ¶ 31.) *Wershba v. Apple Computer Inc.*, *supra*, 91 Cal. App. 4th at 238 (where all class members have suffered a common alleged "wrong", class action is appropriate); *Employment Development Department v. Superior Court*, 30 Cal. 3d 256, 265 (1981)(class action appropriate where a large number of applicants have been harmed on the basis of an invalid government administrative practice); *Armstrong v. Davis*, 275 F. Rd 849, 868 (9th Cir. 2001) (commonality is generally satisfied where [as here] "the lawsuit challenges a system-wide practice or policy that affects all of the putative class members"); *Laduke v. Nelson*, 762 F.2d 1318, 1332 (9th Cir. 1985); *Kincaid v. City of Fresno*, 244 F.R.D. 597, 602 (E.D. Cal. 2007); *Gasperoni v. Metabolife, International Inc.*, 2000 WL 33365948 (E.D. Mich. 2000) (where all plaintiffs allege a common method of misrepresentation and the same legal claim, class action is appropriate). The adequacy requirement is met here too because Plaintiff's Counsel has been involved in numerous wage and hour actions throughout his career. (Otkupman Decl., ¶¶ 5, 6, 7.) Furthermore, there is no indication of any actual (or potential) conflicts between Plaintiff and the Class. It is sufficient to show that the representative stands in the same shoes as every other member of the class, and seek the same relief. No more is required. *Bowles v. Superior Court* 44 Cal. 2d 574, 587 (1955); *McGhee v. Bank of Am. Corp.* 60 Cal. App. 3d 442, 450 (1976). Plaintiff is therefore an adequate representative.

The class resolution is superior to other available methods for the fair and efficient adjudication of the controversy. See *Hanlon*, *supra*, 150 F. 3d at 1023. The superiority requirement involves a comparative evaluation of alternative mechanics of dispute resolution." *Hanlon*, *supra*, *150* F. 3d at 1023. The predominance requirement is easily met because "when the defendant has engaged in some course of conduct that affects a group of persons and gives rise to cause of action, one or more of the elements of that cause will be common to all of the persons affected." *Gen'l Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 155 (1982). Further, the necessity for class members to prove their own damages does not mean individual fact questions predominate *Clothersrigger, Inc. v. TGE Corp.*, 191 Cal. App. 3d 605, 617 (1987).

PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PROVISIONAL CERTIFICATION OF CLASS: MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

10

OTKUPMAN LAW
FIRM, ALC

1    Here, as in *Hanlon*, the alternative methods of resolution are individual claims for a very small

2    amount of damages. *Hanlon, supra, 150* F. 3d at 1023. These claims "would prove uneconomic for

3    potential plaintiffs "because litigation costs would dwarf potential recovery." *Id.* For this reason, in

4    this case, as in *Hanlon*, a class action is the preferred method of resolution. The scope of this case is

5    narrowly focused on a specific class of persons (all current and former hourly-paid, non-exempt

6    employees who worked in Defendant's stores in the State of California at any time during the period

7    from December 27, 2013 and February 19, 2019.) The common questions of law and fact in this case

8    all stem from the claims that Class Members did not receive meal periods or rest breaks or

9    compensation in lieu thereof, overtime owed, timely wages due at termination, and wage statements

10   that complied with Labor Code section 226(a). (Otkupman Decl., ¶ 34.)

### D. Plaintiff's Claims Are Typical

11   A class representative's claims are typical of a class when they arise from the same event,

12   practice, or course of conduct that gives rise to the claims of other putative class members, and if the

13   claims rest on the same legal theories. *Classen v. Weller, supra,* 145 Cal. App. 3d at 46 ("[I]t has

14   never been the law in California that the class representative must have *identical* interest with the

15   class members. The only requirements are that common questions of law and fact *predominate* and

16   that the class representative be *similabowrly* situated.")(emphasis in original). *B.W.I. Custom Kitchen*

17   *v. Owens-Illinois, Inc.* 191 Cal. App. 3d 1341, 1347 (1987).

18   Here, the claims are typical because they arise from the same conduct as other class members.

19   (Otkupman Decl. ¶ 34.) Specifically, Plaintiff alleges that she did not receive her meal or rest breaks,

20   she did not receive timely pay wages due at termination, did not receive proper overtime wages, and

21   her wage statements did not contain the total gross and net wages earned during the pay period as

22   well as the corresponding number of hours worked at each rate. Other members of the class allege

23   they suffered similar violations and received similar wage statements. (Otkupman Decl. ¶ 35.)

### E. Class Received Adequate Notice

24   In its Preliminary Approval Order, this Court approved the Notice provided to class members.

25   The Court-approved Class Notice in this case adequately protected the due process rights of all Class

26   Members. In general, the "notice given to the class must fairly apprise the class members of the terms

27

28

OTKUPMAN LAW
FIRM, ALC

PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PROVISIONAL
CERTIFICATION OF CLASS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
11

1 of the proposed compromise and of the options open to dissenting class members." *Wershba, supra,*

2 91 Cal.App.4th at 251-252 (internal citation omitted). "The purpose of a class notice in the context

3 of a settlement is to give class members sufficient information to decide whether they should accept

4 the benefits offered, opt-out and pursue their own remedies, or object to the settlement," *Id.* at 252;

5 California Rule of Court 3.769(f).

### F.  The Settlement Avoids the Risks Inherent in Continued Litigation

6

7 The settlement affords significant relief to Class Members and avoids the risks that will attach

8 to further litigation. The reasonableness of the proposed settlement is underscored by the fact that

9 Defendant have legal and factual grounds available to defend this action. In light of these grounds,

10 Defendant would have mounted a vigorous defense during further litigation. Among other things,

11 Defendant would have opposed class certification, and, if a class had been certified, would have likely

12 filed a motion for decertification. Defendant would also have contested the merits of each of

Plaintiff's claims at trial. (Otkupman Decl. ¶ 18.)

13 This factor also weighs in favor of settlement approval. Although the parties engaged in a

14 significant amount of formal and informal discovery in advance of the mediation, Plaintiff has not

15 taken Defendant's depositions or completed written discovery, which would have required the

16 expenditure of substantial time and resources by both Parties. (*Id.*) Moreover, Plaintiff still had to

17 file for class certification, and faced the prospect of appeals in the wake of a disputed class

18 certification ruling for Plaintiff and/or an adverse summary judgment ruling. (*Id.*) Even if the class

19 sought to be certified by Plaintiff was in fact certified, the Parties would incur considerably more

20 attorneys' fees and costs through a possible decertification motion, trial, and possible appeal. (*Id.*)

21 This settlement avoids those risks and the accompanying expense. Thus, this factor supports final

22 approval.

23 While Class Counsel is confident that this Court would certify the class, Class Counsel would

24 still have to litigate class certification, establish class liability and then prove up various issues

25 regarding damages and penalties. Such efforts would take years and would necessitate expert witness

26 testimony. By contrast, the Settlement ensures timely relief and recovery to the Class. (*Id.*)

27 Defendant presented factual and legal defenses to the claims in this litigation that if successful,

28

OTKUPMAN LAW
FIRM, ALC

PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PROVISIONAL
CERTIFICATION OF CLASS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

12

1  would have either reduced or eliminated recovery to the Class. First, Defendant asserts that its policies

2  and practices did not violate applicable wage and hour laws, as discussed above. (Otkupman Decl., ¶

3  20.) Second, Defendant asserts the evidence mustered by Plaintiff does not evince any common

4  policy or practice that is violative of California wage and hour laws; in fact, according to Defendant,

5  the evidence merely demonstrates that any violations arose from individualized and isolated events

6  that would not be susceptible to class-wide determination. (*Id.*) Finally, Defendant further contends

7  that even if class certification was granted, there is no guarantee of a good outcome for Plaintiff at

8  trial. Specifically, Defendant alleges that Defendant complied with all applicable wage and hour laws

9  and Labor Code provisions. Defendant alleges its employees were entitled to, and actually provided

10  with, meal periods and rests breaks in accordance with California law, were properly compensated

   for overtime work, and were provided accurate itemized wage statements. (*Id.*)

11  Defendant is represented by competent and experienced Counsel, and would undoubtedly

12  have raised all of the above arguments, and more, in continued litigation. Despite Plaintiffs'

13  confidence in their ability to prove all of their claims on a class wide basis, any one of the above

14  defenses, if decided in favor of Defendant could reduce or even eliminate any potential damage

15  award. (Otkupman Decl. ¶ 20.)

16  ### G. The Requested Administration Costs Are Reasonable

17  In its February 19, 2019, Order, the Court preliminarily approved administration costs of up

18  to eight thousand five hundred dollars ($8,500.00), which includes all work to conclude CPT Inc.

19  duties and responsibilities pursuant to the settlement, to calculate the settlement payments, issuance

20  and mailing of settlement payment checks, to do the necessary tax reporting on such payments,

21  answer class members question and other tasks. (La Decl., ¶ 2.) CPT Inc.'s total costs for services

22  in connection with the administration of this Settlement is ten thousand five hundred dollars

23  ($10,500.00). (See La Decl., ¶ 14.) For the foregoing reasons, ten thousand five hundred dollars

24  ($10,500.00) payment to CPT Inc. in administration costs is reasonable and appropriate in this case.

25  ### H. Payout Schedule, Final Judgment, and Continuing Jurisdiction to Enforce the
   Settlement Agreement

26  Defendant shall pay all Class Members who do not opt-out. (Otkupman Decl., ¶ 21.) Each

27

28

OTKUPMAN LAW
FIRM, ALC

1 member of the class shall receive a proportionate amount depending on the amount of work shifts

2 that employee worked during the relevant period. *Id.* Defendant has calculated the estimated total

3 number of shifts that each Class Member worked during the applicable Settlement Class Period.

4 Estimated Individual Settlement Payments: To determine each Class Member's estimated "Individual

5 Settlement Payment," the Claims Administrator used the following formula:

     i)     Estimated Individual Settlement Payment = Individual Work Shifts+ Class Work

6             Shifts x Net Settlement Amount.

7

     ii)    The Individual Settlement Payments will be reduced by any required legal deductions

8             and withholdings for each Participating Class Member. (See Otkupman Decl. ¶ 22 as

9             well as Exhibit A attached and Settlement Agreement section 6.7 Calculation of

10             Settlement Payments)

11      The Parties recognize that the Settlement Payments to be paid to Class Members reflect

12 settlement of a dispute over claimed wages, interest, penalties, and other alleged damages. All

13 Settlement Payments to Class Members shall be allocated as follows for tax purposes: 25% to

14 settlement of wage claims, 60% to settlement of claims for penalties, and 15% to settlement of claims

15 for interest. (See Exhibit A attached to Otkupman Decl. Settlement Agreement section 6.7.2

16 Calculation of Settlement Payments). Checks issued to Class Members pursuant to the settlement

17 shall remain negotiable for one hundred eighty (180) days. (Otkupman Decl., ¶ 23.)

18     **I.**  **Funding and Distribution time table based upon Section 7.4 of the Settlement**

19        **Agreement.**

20      Within fifteen (15) calendar days after the Effective Date, Defendant shall pay into the

21 Settlement Fund controlled by the Claims administrator the amounts necessary to fund the Settlement.

22 (See attached hereto Otkupman Declaration as Exhibit A the Settlement Agreement.) Within thirty

23 calendar days of the Effective Date the CTP shall issue Settlement Payment to the Class Members.

24 Within thirty (30) calendar days of the Effective Date, the Claims Administrator shall send a check

25 by mail for the Court-approved Service Payment to the Class Representative. After one hundred and

26 eighty days from issuance undeposited checks will be held by the Claims Administrator; if the Class

27 Member to whom the undeposited check is issued does not contact Class Counsel or the Claims

28

PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PROVISIONAL CERTIFICATION OF CLASS: MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

14

1  Administrator concerning his or her settlement payment within one-hundred eighty (180) calendar

2  days of issuance, the Stipulation of Settlement, including its release of claims, will be binding on that

3  Class Member (except with respect to FLSA claims), and the amount of that Class Member's

4  settlement payment shall be transmitted to the Controller of the State of California, to be held and

5  disposed of by the Controller in accordance with California's Unclaimed Property Law. (See attached

6  hereto Otkupman Declaration as Exhibit A, The Settlement Agreement)

7          Estimated Funding Date: July 24, 2019

8          Estimated Settlement Distribution Date: August 8, 2019

9          Estimated Date that Uncashed Checks will Revert to California Unclaimed Property Law
Fund: January 6, 2020

10

11

12  ## VIII.  CONCLUSION

        For reasons set forth herein, Plaintiff respectfully submits and requests that this Court (1)

13  Certify the class for settlement purposes; (2) approve the class action settlement embodied in the

14  Settlement Agreement and Release between Plaintiff and Defendant; (3) grant final approval of the

15  Settlement, one hundred and seventy-five thousand dollars ($175,000.00), including the five thousand

16  dollars ($5,000.00) participation payment to the Class Representative; (4) grant final approval of the

17  request for CPT Inc. for ten thousand five hundred dollars ($10,500.00); (5) approve Class Counsel's

18  application for attorneys' fees of fifty-seven thousand seven hundred and fifty dollars ($57,750.00)

19  and litigation costs of five thousand five hundred and sixteen dollars and ninety-seven cents.

20  ($5,516.97); (6) approve PAGA penalties in the amount of ten thousand dollars ($10,000.00).

21  Seventy-five percent (75%) of which amounts to seven thousand five hundred dollars ($7,500.00)

22  will be paid to California Labor & Workforce Development, Agency ("LWDA") in satisfaction of

23  any claim for penalties that may be owed to that agency under PAGA. Twenty-five percent (25%) of

24  this amount, two thousand five hundred dollars ($2,500.00) will be included in the Distributable

25  Amount to be distributed to all claimants; and (7) the Court to retain continuing jurisdiction over the

26  parties to the Settlement for the purpose of taking such other actions as may be necessary to enforce

27  the Settlement.

28

OTKUPMAN LAW
FIRM, ALC

DATED:  June 4, 2019                    OTKUPMAN LAW FIRM,
                                        A Law Corporation

                                        By:
                                        Roman Otkupman
                                        Meghan Maertz
                                        Attorneys for Named Plaintiff,
                                        Erica Martin

PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PROVISIONAL
CERTIFICATION OF CLASS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

16

OTKUPMAN LAW
FIRM, ALC